**STEPHEN F. HENRY, ESQ.**
STATE BAR # 142336
2625 Alcatraz Avenue, # 615
Berkeley, California 94705
Telephone: (510) 898-1883
Facsimile (510) 295-2516
shenry@SHenrylaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE

NOTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID ZWEIG, an individual, | Case No. 17-cv-05624-MEJ |
| Plaintiff, | **DECLARATION OF DAVID ZWEIG IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| vs. | |
| YOSI, INC., a New York corporation, | |
| Defendant. | |

I, David Zweig, declare:

1. I am plaintiff in the above entitled matter. I have personal knowledge of the facts in this Declaration and if called upon to testify, I could and would testify competently to the facts herein.

2. Defendant has not appeared in this action and has not responded to the complaint within the time permitted by law.

3. Defendant is a corporation and, therefore, is not a minor, incompetent person, or a person in military service or otherwise exempted from default judgment under the Soldiers' and Sailors' Civil Relief Act of 1940.

4. A clerk's default on the original complaint was entered herein on January 23, 2018 and on the amended complaint on May 11, 2018.

5. Effective September 19, 2016, I entered an employment contract with Yosi, Inc., attached to the Complaint and this Declaration as Exhibit A.

6. Yosi had a strong desire to sell its product to doctors in California and I was part of a substantial marketing effort directed at doctors in California. While I worked for Yosi, a colleague and I made 40 cold calls in person in Los Angeles on behalf of Yosi, trying to sell its product in California. I also called dozens of California doctors' offices by phone. In addition, I sent out hundreds of sales mailings to doctors in California.

7. I am owed $69,775.45 in unpaid salary not including interest.

8. The Agreement does not set forth an "end of term" date, and Yosi and I agreed they would reassess the terms of the Agreement after one year.

9. I have performed the work required of me under the Agreement.

10. However, Yosi has failed to fulfill its obligation to pay me as required under the terms of the Agreement.

11. As a result, and as set forth in the Agreement, I am privileged to terminate the Agreement "with Cause," entitling me to immediate payment of all money owed, as well as a "lump sum, cash severance payment equal to two months' of base salary" equaling $12,193.33.

12. The said sums have not been paid.

13. I am also owed $1,172.50 for money advanced to pay for legal fees incurred by Yosi with regard to documents prepared on behalf of the company.

14. I am also claiming willful failure to pay me the wages due and owing, constituting a violation of New York Labor Code §198(1)(a), which provides for liquidated damages, equaling the amount owed, in the event of willful failure to pay wages to an employee who is available for payment and has made verbal and written demands for such payment:

    a. Since the date of termination of my employment with Defendant, I have been available and ready to receive the amount of wages I am due and owed.

      b. Defendant's failure to pay me the wages due and owed was and has been willful in that I have made both verbal and written demand for this payment but Defendant has refused to pay any part of the amount due and owed.

15. Hari Prasad, Chief Executive Officer and I have had numerous verbal and written communications in which I requested to be paid on the contract. He has never denied owing me the money but has simply refused to pay it. I sought to be paid through the normal payroll process so that I would obtain paystubs and payroll taxes would be paid. Mr. Prasad did not want to set up a payroll process and sought to avoid paying payroll taxes.

16. Therefore, I contend that I am entitled to a penalty in the amount of my owed wages of $81,968.79.

17. Pursuant to New York Labor Code 198(1)(a), I request that the court award reasonable attorney fees and costs incurred in this action, as well as interest accrued. Currently, my attorney's fees total $14,770, not including the cost of preparing this Motion for Default Judgment

18. I am also claiming costs of $450 for the filing fee, $120 for attempted but unsuccessful service of process on Yosi's office, and $120 for a successful service of process on Yosi.

19. Finally, I am claiming prejudgment interest at a rate of 9% which, to date, equals $8,368.89.

20. Attached as Exhibit B is a spreadsheet that I prepared detailing my damages.

I declare under penalty of perjury under the laws of the United States and California that the foregoing is true and correct. Executed in Oakland, California on May 16, 2018.

                                              _____
                                              David Zweig

# EXHIBIT A

## EMPLOYMENT AGREEMENT

**THIS EMPLOYMENT AGREEMENT** ("Agreement") is made as of September 19, 2016 (the "Effective Date") by and between David Zweig ("Officer") and Yosi, Inc. ("Employer").

**WHEREAS**, Employer and Officer desire to set forth the terms and conditions of Officer's employment with Employer under this Agreement;

**NOW, THEREFORE**, in consideration of the foregoing and of the mutual covenants and agreements in this Agreement, the parties agree as follows:

1. **Employment of Officer; Employer's Authority**. Employer agrees to employ Officer, and Officer accepts such employment in accordance with the terms of this Agreement. Officer agrees to comply with the Employer's reasonable rules and regulations as adopted by the Employer's Board of Directors regarding performance of his duties, and to carry out and perform those orders, directions and policies established by the Employer with respect to his engagement. Officer shall promptly notify the Employer's President of any objection he has to such officer's directives and the reasons for such objection.

2. **Position and Duties of Officer; Representations and Warranties**.

   a) Officer will serve as Chief Strategy Officer and report directly to the Chief Executive Officer of Employer. Officer agrees to serve in such position or in such other positions of a similar status or level as Employer determines from time to time, and to perform the commensurate duties that Employer may assign from time to time to Officer, including the duties set out in Exhibit A hereto (the "Services"), until such time as Officer's employment with Employer is terminated pursuant to this Agreement.

   b) Officer represent and warrant to the Employer that: (i) he is entering into this Agreement with the Employer and your performance of the Services do not and will not conflict with or result in any breach or default under any other agreement to which you are subject; (ii) he has the required skill, experience and qualifications to perform the Services, shall perform the services in a professional and workmanlike manner in accordance with best recognized industry standards for similar Services, and shall devote sufficient resources to ensure that the Services are performed in a timely and reliable manner; and (iii) he shall perform the Services in compliance with all applicable federal, state and local laws and regulations.

3. **Time Devoted and Location of Officer.**

   a) Subject to Section 3(c), Officer will devote his full business time and energy to the business affairs and interests of Employer. Officer agrees that he will perform the services contemplated by this Agreement in accordance with the reasonable policies established by the Employer and provided to Officer from time to time.

   b) Officer's primary business office and normal place of work will be located in Piedmont, California.

c) Officer may serve as an officer, director, agent or employee of any direct or indirect subsidiary or other affiliate of Employer, and may serve as a director of other companies of other business enterprises, provided that Officer informs Employer of such directorships in writing. Officer will use his best efforts and abilities to insure that such activities and services do not interfere or conflict with the performance of Officer's duties under this Agreement.

d) Officer may serve in any capacity with any business, civic, educational or charitable organization, or any governmental entity or trade association, without seeking or obtaining such written approval if such activities and services do not interfere or conflict with the performance of Officer's duties under this Agreement.

4. **Term; At-Will Employment**. This Agreement shall commence to be effective as of the Effective Date, and shall be considered to be a contract for employment "at-will". Officer will be an at-will employee of the Employer, which means the employment relationship can be terminated by either party for any reason, at any time, with or without prior notice and with or without Cause. Further, Officer's participation in any equity incentive or benefit program is not to be regarded as assuring Officer of continuing employment for any particular period of time.

5. **Compensation.**

    a) Employer will pay Officer an initial base salary in the amount of $140,000 per year, which amount will be paid in accordance with Employer's normal payroll schedule less appropriate withholdings for federal and state taxes and other deductions authorized by Officer. Base salary will be paid beginning as of September 19, 2016 (the date an oral agreement was reached for Officer to commence work). In addition, the payment of base salary is subject to the following terms:

        1) Employer's obligations to pay 75% of base salary may be satisfied, at Employer's sole discretion, by a grant to Officer promptly following the execution of this Agreement, subject to the approval of the Employer's board of directors and Officer's execution of a restricted stock agreement in the form attached as Exhibit B (the "Restricted Stock Agreement for Salary"), of certain shares of Employer's common stock based on a $6.25 million valuation, as more fully described in and subject to the terms of the Restricted Stock Agreement for Salary.

        2) The base salary shall be reduced to $80,000 (the "Revised Salary") upon the completion of the milestones set forth in Exhibit E, which determination shall be made by the Employer in its reasonable discretion; *provided that*, at such time, Employer shall be required to pay the Revised Salary in cash.

        3) Promptly following the execution of this Agreement, subject to the approval of the Employer's board of directors and Officer's execution of a restricted stock agreement in the form attached hereto as Exhibit C (the "Restricted Stock Agreement for Services"), Employer will make a grant of Fifty Thousand (50,000) shares of Employer's common stock, at a $6.25 million valuation, as more fully described in and subject to the terms of the Restricted Stock Agreement for Services.

    b) Benefits. Officer will be eligible to participate in all benefit plans of Employer to the same extent as they are made available to other senior executives of Employer at Officer's level. Officer will receive separate information detailing the terms of the benefit plans and the terms of such plans will control. Officer will

also be eligible to participate in any annual incentive plan and stock option plan applicable to Officer by its terms. Officer shall be entitled to an annual paid vacation in accordance with the Employer's policy applicable to senior executives from time to time in effect, but in no event less than three (3) weeks per calendar year (as prorated for partial years), which vacation may be taken at such times as the Executive elects with due regard to the needs of the Employer. The Executive shall also be entitled to paid holidays and sick days in accordance with the policy of the Employer. Carry over of vacation days shall not be allowed.

   c) (c) Sales Commissions   Officer will receive a sales commission of 10 percent of the gross amount of all Net Sales during the first year of a contract. During the second year of a contract, the commission will be 7.5 percent of the gross recurring revenues; during the third year the commission will be 5 percent of the gross recurring revenues and during subsequent years the commission will be 2 percent of gross recurring revenues. Incremental revenues from the customer will be compensated on the same basis as first year sales, with subsequent years following the formula above. Sales commissions earned will be paid when the customer's invoices relating thereto have been paid. If Officer is no longer employed by Employer for any reason (whether this Agreement expires pursuant to Section 1 or is terminated by either party and regardless of whether any termination is for Cause or Good Reason), sales commissions will continue to be paid in accordance with this Section 4(c), except that payments will cease after the third year's sales commission of 5 percent.  For purposes of this Agreement, "Net Sales" means gross revenue actually received by Employer with respect to customers registered by Officer in Employer's CRM system as account of Officer, provided Employer does not dispute that registration within five business days, but only with respect to transactions closed after that registration, less the following permitted deductions to the extent directly related to providing services of the Employer to customers: (i) any cash discounts or rebates actually taken, in each case to the extent not already provided for in the gross invoice price; (ii) all credits and allowances actually granted to such customer for any reason, including promotions, billing errors and retroactive price reductions, in each case to the extent not already provided for in the gross invoice price; (iii) any tax or governmental charge borne by the Employer based on the gross revenue; and (iv) any sales, agents' or brokers' commissions actually paid by Employer to third parties (other than Officer and affiliates of the Employer). The commission shall be calculated pursuant to the terms of this Agreement by the Employer and shall be paid by the Employer to the Officer no later than 30 days following the end of the applicable Quarter or other period of calculation as agreed to by the Parties.  "Quarter" shall mean each period of three calendar months ending on March 31st, June 30th, September 30th and December 31st.

6. **Expenses.** During the term of this Agreement, Employer will reimburse Officer promptly for all reasonable travel, parking, business meetings and similar expenditures in pursuance and furtherance of Employer's business upon receipt of reasonably supporting documentation as required by Employer's policies applicable to its officers and employees generally; *provided, that* Officer shall have obtained the prior written consent of the Employer prior to incurring any expense greater than $500.  Officer's reimbursable expenses shall be paid by Employer in cash within a reasonable time after presentment by Officer of an itemized list of invoices or receipts sufficiently describing such expenses.

7. **Termination.**

   a) Termination Due to Resignation and Termination with Cause.  If Employer terminates this Agreement for Cause or Officer terminates this Agreement without Good Reason, Employer's only remaining financial obligation to Officer under this Agreement will be to pay any earned but unpaid base salary

and accrued but unpaid vacation and reimbursable travel expenses through the date of Officer's termination, as well as any sales commission as provided for in Section 4(c) of this Agreement.

b) <u>Termination without Cause.</u> If Employer terminates this Agreement without Cause or Officer terminates this Agreement for Good Reason, in each case at any time prior to the first anniversary of this Agreement, Employer shall pay Officer a lump sum, cash severance payment equal to two months' of the base salary in effect at such time. Such payment shall be made no later than ninety (90) days from the termination date. The payment pursuant to the preceding sentence will be in addition to any earned but unpaid base salary and accrued but unpaid vacation and reimbursable travel expenses through the date of Officer's termination, as well as any sales commission as provided for in Section 4(c) of this Agreement.

c) <u>Cause</u>. For purposes of this Agreement, "Cause" means (i) the Officer's intentional, willful or knowing failure or refusal to perform the Officer's duties pursuant to his service relationship with the Employer (other than as a result of physical or mental illness, accident or injury) that, in the reasonable judgment of the Board, may have a material adverse effect on the Employer; (ii) dishonesty, willful or gross misconduct, or illegal conduct by the Officer in connection with the Officer's service relationship with the Employer which in the Board's reasonable judgment may result in damage to the business or reputation of the Employer; (iii) the Officer's conviction of, or plea of guilty or nolo contendere to, a charge of commission of a felony (exclusive of any felony relating to negligent operation of a motor vehicle); and (iv) a material breach by the Officer of any other material agreements with the Employer to which the Officer is party; provided, however, in the case of clauses (i) and (iv) above, the Employer shall be required to give the Officer fifteen (15) calendar days prior written notice of its intention to terminate the Officer for Cause and the Officer shall have the opportunity during such fifteen (15) day period to cure such event if such event is capable of being cured; provided, further, that in the event that the Officer terminates his service relationship with the Employer during such fifteen (15) day period for any reason, such termination shall be considered a termination for Cause.

d) <u>Good Reason</u>. For purposes of this Agreement, "Good Reason" means Officer's resignation due to the occurrence of any of the following conditions which occurs without Officer's written consent, provided that the requirements regarding advance notice and an opportunity to cure set forth below are satisfied: (i) a change in Officer's position with the Employer that materially reduces Officer's compensation (other than as permitted by the Agreement), duties, level of authority or responsibility; or (ii) the Employer conditions Officer's continued service with the Employer on Officer's being transferred to a site of employment that would increase Officer's one-way commute by more than 35 miles from Officer's then principal residence. In order for Officer to resign for Good Reason, Officer must provide written notice to the Employer of the existence of the Good Reason condition within 60 days of the initial existence of such Good Reason condition. Upon receipt of such notice, the Employer will have 30 days during which it may remedy the Good Reason condition. If the Good Reason condition is not remedied within such 30-day period, Officer may resign based on the Good Reason condition specified in the notice effective no later than 30 days following the expiration of the 30-day cure period.

e) <u>Automatic Termination.</u> This Agreement will terminate automatically upon the death or permanent disability of Officer. Officer will be deemed to be "Disabled" or to suffer from a "Disability" within the meaning of this Agreement if, because of a physical or mental impairment, Officer has been unable to perform the essential functions of his position for a period of 180 consecutive days. The term "essential duties" is defined as the ability to consistently perform Officer's assigned duties, including travel requirements. Subject to continuing coverage under applicable benefits plans, and except as otherwise

provided in this Agreement, if Officer is terminated pursuant to this Section 6(e), Employer's only remaining financial obligation to Officer under this Agreement will be to pay any earned but unpaid base salary and accrued but unpaid vacation and reimbursable travel expenses through the date of Officer's termination, as well as any sales commission as provided for in Section 4(c) of this Agreement.

f) <u>Effect of Termination</u>. Except as otherwise provided for in this Agreement, upon termination of this Agreement, all rights and obligations under this Agreement will cease except for the rights and obligations under Sections 5 and 6 to the extent Officer has not been compensated or reimbursed for services performed prior to termination or has not been paid vacation and reimbursable travel expenses accrued through the termination date (the amount of compensation to be prorated for the portion of the pay period prior to termination), as well as any sales commission as provided for in Section 4(c) of this Agreement. A termination of this Agreement will constitute a termination of Officer's employment with Employer.

8. **Governing Law.** This Agreement will be governed by, and construed in accordance with, and all disputes between the parties will be governed exclusively by the domestic internal laws of the State of New York, without regard for conflicts of law principles.

9. **Arbitration.** Binding, confidential arbitration pursuant to this Section 9 will be the only remedy for any dispute or claim of any kind, including third-party claims arising under, concerning, or relating to this Agreement, its interpretation, its validity (including any claim that all or any part of this Agreement is void or voidable), its termination, or its subject matter, whether sounding in contract, tort, equity, statutory law, administrative regulation or otherwise (a "Claim"). Any Claim, will be resolved in a confidential expedited arbitration administered by the American Arbitration Association ("AAA") in accordance with the AAA's Employment Arbitration Rules (the "Rules") then in effect. Any Claim submitted to arbitration will be decided by a single, neutral arbitrator (the "Arbitrator") mutually agreed by the parties or, if they cannot agree within 15 business days of the commencement of arbitration, in accordance with the Rules. The Arbitrator must be qualified as a New York attorney who has at least ten years of prior professional experience in private practice as a business or commercial litigator. Any arbitration hearings or conferences pursuant to this Section 9 will be conducted exclusively by means of conference telephone or other communications technology, as reasonably determined by the Arbitrator, by means of which all persons participating in those hearings or conferences can hear each other, and neither the parties, the Arbitrator or any attorneys, witnesses or other representatives of the parties will be required to be physically present in any particular place for purposes of any hearing or conference; *provided that*, if the Arbitrator determines that the parties shall be required to be physically present, the parties hereto consent to the arbitration in the State of New York, in the county of New York. The Arbitrator will have the exclusive power to adjudicate the alleged breach, enforcement, interpretation or validity of this Agreement, including as to the scope or applicability of this arbitration clause. Discovery within the arbitration will be limited as reasonable or necessary by the Arbitrator. All AAA fees and costs will be borne equally by the parties, except that in rendering the award, the Arbitrator will allocate and award an appropriate share of the prevailing party's reasonable attorneys' fees and costs, to the losing party. Judgment on any arbitration award may be entered and enforced by any court of competent jurisdiction. EACH PARTY EXPRESSLY AGREES AND UNDERSTANDS THAT BY AGREEING TO ARBITRATION, IT IS WAIVING THE RIGHT TO A JURY TRIAL OR TO A CIVIL ADMINISTRATIVE TRIBUNAL.

10. **Confidentiality**. As an employee of the Employer, Officer will have access to certain confidential information of Employer and Officer may, during the course of your employment, develop certain information or inventions that will be the property of Employer. To protect the interests of Employer, you

will be required to sign the Employer's standard Confidential Information and Invention Assignment Agreement in the form attached hereto as <u>Exhibit D</u>.

11. **Authorization to Work**. Officer shall be required to provide proof of identity and work eligibility. Because of regulations adopted in the Immigration Reform and Control Act of 1986, within three (3) business days of starting your new position, Officer will need to present documentation demonstrating that he has authorization to work in the United States.

12. **Notices.** Any notice required or permitted under this Agreement will be given in writing by personal delivery, by USPS Priority Express Mail, by nationally recognized overnight delivery service (e.g. UPS), or e mail, in each case addressed to the party to which the notice is provided at the address or e mail address indicated below the party's signature line on this Agreement or at another address or e mail address designated by the party by notice from time to time to all other parties to this Agreement. Any notice will be deemed received on the earlier of the date of actual delivery or the date on which delivery is refused, regardless of whether the party has vacated the physical address or discontinued the e-mail address. The actual receipt by the addressee of any written notice will constitute delivery notwithstanding the failure to have complied with any provisions of this Section 12.

13. **Headings.** The headings of the sections of this Agreement have been inserted for convenience of reference only and should not be construed or interpreted to restrict or modify any of the terms or provisions of this Agreement.

14. **Severability.** If any provision of this Agreement is held to be illegal, invalid, or unenforceable under present or future laws effective during the term of this Agreement, such provision will befully severable and this Agreement and each separate provision will be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of thisAgreement, and the remaining provisions of this Agreement will remain in full force and effect and will not be affected by the illegal, invalid or unenforceable provision or by its severance from this Agreement. In addition, in lieu of such illegal, invalid or unenforceable provision, there will be added automatically, as part of this Agreement, a provision as similar in terms to such illegal, invalid or unenforceable provisions as may be possible and be legal, valid and enforceable, if such reformation is allowable under applicable law.

15. **Binding Effect.** This Agreement will be binding upon and shall inure to the benefit of each party and each party's respective successors, heirs and legal representatives. This Agreement may not be assigned by Officer to any other person or entity but may be assigned by Employer to any wholly-owned subsidiary of Employer or to any successor to or transferee of substantially all of the assets of Employer. This Agreement is entered into by the parties for the exclusive benefit of the parties and their successors and permitted assignees. The Agreement is expressly not intended for the benefit of any other person. No third party will have any rights under this Agreement.

16. **Entire Agreement.** This Agreement, together with the Restricted Stock Agreement and the Plan, embody the entire agreement and understanding between the parties with respect to the subject matter hereof and thereof and supersede all prior representations, agreements and understandings, whether written or oral, relating to such subject matter. No amendment or modification of this Agreement will be valid unless made in writing and signed by each of the parties. No representations, inducements or agreements have been made to induce either Officer or Employer to enter into this Agreement which are not expressly set forth within this Agreement.

[*Signature Page Follows on Next Page*]

In witness whereof, the parties have executed this Agreement as of the Effective Date.

Yosi, Inc.

By: _____

    Name:  Hari Prasad
    Title:   Chief Executive Officer

    Address:
    85 Broad St., Floor 16
    New York, NY 10004

    E-mail: hari@yosicare.com

_____

David Zweig

    128 Sunnyside Avenue
    Piedmont, CA 94611
    dbzweig@gmail.com

# EXHIBIT B

### ANNUAL BASE SALARY $140,000 DUE = $11,666 per month

| | Possible Workdays | Days Worked | Gross Wages | FICA Wages | Employer Share SocSec Withholding | Employer Share Medicare Withholding | CA SDI WITHHOLDING | Amount Owed | Amount Paid | Interest | TOTAL INCLUDING INTEREST |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Sept. 2016 | 22 | 10 | 5,303.03 | 5,303.03 | (328.79) | (76.89) | (47.73) | 4,849.62 | (4,849.62) | | |
| Oct. 2016 | 21 | 21 | 11,666.67 | 11,666.67 | (723.33) | (169.17) | (105.00) | 10,669.17 | (10,669.17) | | |
| Nov. 2016 | 22 | 22 | 11,666.67 | 11,666.67 | (723.33) | (169.17) | (105.00) | 10,669.17 | (9,481.21) | 165.83 | 1,353.78 |
| Dec. 2016 | 22 | 22 | 11,666.67 | 11,666.67 | (723.33) | (169.17) | (105.00) | 10,669.17 | | 1,423.57 | 12,092.73 |
| Jan. 2017 | 22 | 22 | 11,666.67 | 11,666.67 | (723.33) | (169.17) | (105.00) | 10,669.17 | - | 1,331.50 | 12,000.66 |
| Feb. 2017 | 20 | 20 | 11,666.67 | 11,666.67 | (723.33) | (169.17) | (105.00) | 10,669.17 | - | 1,244.52 | 11,913.69 |
| Mar. 2017 | 23 | 23 | 11,666.67 | 11,666.67 | (723.33) | (169.17) | (105.00) | 10,669.17 | - | 1,158.20 | 11,827.36 |

### ANNUAL BASE SALARY $80,000 DUE = $6666.67 per month

| | Possible Workdays | Days Worked | Gross Wages | FICA Wages | Employee Share SocSec Withholding | Employee Share Medicare Withholding | CA SDI WITHHOLDING | Amount Owed | Amount Paid | Interest | TOTAL INCLUDING INTEREST |
|---|---|---|---|---|---|---|---|---|---|---|---|
| April 2017 | 20 | 20 | 6,666.67 | 6,666.67 | (413.33) | (96.67) | (60.00) | 6,096.67 | - | 611.19 | 6,707.86 |
| May 2017 | 23 | 23 | 6,666.67 | 6,666.67 | (413.33) | (96.67) | (60.00) | 6,096.67 | - | 560.94 | 6,657.61 |
| June 2017 | 22 | 22 | 6,666.67 | 6,666.67 | (413.33) | (96.67) | (60.00) | 6,096.67 | - | 511.07 | 6,607.73 |
| July 2017 | 21 | 21 | 6,666.67 | 6,666.67 | (413.33) | (96.67) | (60.00) | 6,096.67 | - | 461.57 | 6,558.23 |
| August 2017 | 23 | 23 | 1,666.67 | 1,666.67 | (103.33) | (24.17) | (15.00) | 1,524.17 | - | 102.91 | 1,627.08 |
| | | | | | | | | | | 7,571.29 | 77,346.74 |
| Subtotal | | | 103,636.36 | 103,636.36 | (6,425.45) | (1,502.73) | (932.73) | 94,775.45 | | | |
| Wage Payment 1/3/2017* | | | | | | | | (25,000.00) | | | |
| Payroll Balance Due | | | | | | | | 69,775.45 | | | |

* Yosi issued no pay stub, and did not indicate Federal or state withholding. No W-2 was issued

**2 MONTHS' SEVERANCE AT TERMINATION W/O CAUSE, PER EMPLOYM'T CONTRACT**

|  | Possible Workdays | Days Worked | Gross Wages | FICA Wages | Employee Share SocSec Withholding | Employee Share Medicare Withholding | CA SDI WITHHOLDING |  |  |  |  |
|---|---|---|---|---|---|---|---|---|---|---|---|
| September | 20 | 20 | 6,666.67 | 6,666.67 | (413.33) | (96.67) | (60.00) |  |  |  |  |
| October 20 | 23 | 23 | 6,666.67 | 6,666.67 | (413.33) | (96.67) | (60.00) |  |  |  |  |
| Subtotal |  |  | 13,333.33 | 13,333.33 | (826.67) | (193.33) | (120.00) | 12,193.33 | - | 797.60 | 12,990.93 |
| **TOTAL SALARY DUE** |  |  |  |  |  |  |  | 81,968.79 |  |  |  |
|  |  |  |  |  |  |  |  |  |  | ####### | 90,337.67 |

**OTHER EXPENSES & FEES DUE**

| | |
|---|---|
| Legal fees for stockholder rights agreement advanced to Yosi, never recompensated | 1,172.50 |
| Filing fee | 450.00 |
| Service fee | 250.00 |
| 9% pre-judgment interest on overdue pay, compounded monthly thu 5/15/18. | 8,368.89 |
| Estimated legal fees | 14,770.00 |

| | |
|---|---|
| Subtotal | 25,011.39 |
| **NEW YORK STATE PENALTY 100% of OVERDUE WAGES** | 81,968.79 |
| **GRAND TOTAL DUE** | 188,948.96 |