UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID ZWEIG, <br>     Plaintiff, <br>   v. <br> YOSI INC., <br>     Defendant. | Case No. 17-cv-05624-MEJ <br><br> **ORDER FOR REASSIGNMENT WITH REPORT & RECOMMENDATION RE: MOTION FOR DEFAULT JUDGMENT** <br><br> Re: Dkt. No. 28 |

## INTRODUCTION

Pending before the Court is Plaintiff David Zweig's Second Motion for Default Judgment. Dkt. No 28. In the Motion, Zweig requests the Court enter an order granting default judgment on its claims against Defendant Yosi Inc., awarding him $188,949 in damages, fees, costs, and interest. No response has been received from Yosi. The undersigned finds this matter suitable for disposition without oral argument, and vacates the June 21, 2018 hearing pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-(1)(b).

After carefully reviewing the motion and controlling authorities, the undersigned issues this Report and Recommendation. As Yosi has not consented to magistrate judge jurisdiction as required by 28 U.S.C. § 636(c), the Clerk of Court shall **REASSIGN** this case to a district judge for disposition. The undersigned **RECOMMENDS** the District Judge **GRANT IN PART** the Motion for Default Judgment for the reasons set forth below.

## BACKGROUND

Effective September 19, 2016, Zweig entered into an employment agreement with Yosi. Am. Compl. ¶ 9, Dkt. No. 23; *see also* Zweig Decl. ¶ 5 & Ex. A (Agreement), Dkt. No. 28-1. Zweig is a resident of California; Yosi is a corporation incorporated in Delaware. Am. Compl. ¶¶

1-2. Yosi had a strong desire to sell its product to doctors in California, and hiring Zweig was part of the company's substantial marketing effort directed at doctors in California. Zweig Decl. ¶ 6 (Zweig and colleague made 40 in-person calls in Los Angeles for Yosi, trying to sell its product in California; called dozens of California doctors' offices by phone; and sent out hundreds of sales mailings to doctors in California).

Under the terms of the Agreement, Zweig would be compensated with an initial base salary of $140,000 per year; Yosi could elect, in its sole discretion, to pay up to 75% of the base salary with restricted stock. Agreement ¶ 5(a). The Agreement did not have an end term date, and the parties agreed that they would reassess the terms of the Agreement after one year. Am. Compl. ¶ 11; Zweig Decl. ¶ 8. If Yosi terminated the relationship with cause, or if Zweig resigned, Yosi's sole remaining financial obligation under the Agreement would be to pay any earned but unpaid base salary and accrued but unpaid vacation and reimbursable travel expenses through the date of termination, as well as sales commission. Agreement ¶ 7(a). If Zweig terminated the Agreement with cause, he would be entitled to immediate payment of all money owed, as well as a "lump sum, cash severance payment equal to two months' of base salary." Am. Compl. ¶¶ 14, 18; Agreement ¶ 7(b) (describing impact of Yosi terminating Agreement "for cause" and impact of Zweig terminating Agreement "with good reason": in addition to unpaid base salary, unpaid vacation and expenses, and sales commissions, Yosi shall pay Zweig a lump sum, cash severance payment equal to two months of base salary in effect at the time, no later than 90 days from termination date), ¶ 7(d) ( defining "good reason" to include resignation due to a change in position that "materially reduces [Zweig's] compensation . . ."); Zweig Decl. ¶ 11.

Zweig performed all of his obligations under the Agreement. Am. Compl. ¶ 12; Zweig Decl. ¶ 9. Yosi nevertheless has refused to pay him under the terms of the Agreement, thereby breaching the terms of the Agreement. Am. Compl. ¶¶ 13, 20-21; Zweig Decl. ¶ 10. Zweig has demanded payment both verbally and in writing, but Yosi CEO Hari Prasad has refused and continued to refuse to pay him the amount due and owing to him. Am. Compl. ¶¶ 41, 43; Zweig Decl. ¶ 15.

Based on Yosi's lack of payment, Zweig is terminating the Agreement with cause. Am.

2

Compl. ¶ 14. He alleges that he is owed $69,775.45 in unpaid salary; $12,193.33 as a result of terminating the Agreement with cause; $1,172.50 in costs Zweig advanced on behalf of Yosi; sums due under New York Labor Law ($81,968.79 in liquidated damages, $14,770 in attorneys' fees, and $8,368.89 in prejudgment interest); and $690 in costs;. *See* Am. Compl. ¶¶ 14, 22, 40, 41, 48, 52; Zweig Decl. ¶¶ 7, 11, 13, 16- 19 & Ex. B.

On September 27, 2017, Zweig filed this action, alleging a number of claims against Yosi, including as is relevant here, a breach of contract claim and a claim for violation of California Labor Code §§ 201 and 203. *See* Compl.

Zweig personally served the summons and complaint on Dr. Jonathan Feistman, a Director of Yosi, on December 7, 2017. Henry Decl. ¶ 2, Dkt. No. 18-2; *see also* COS, Dkt. No. 8. Mr. Prasad acknowledged a lawsuit was filed by email in January 2018. Henry Decl. ¶ 4. Yosi did not answer. *Id.*; *see also* Docket. Zweig obtained entry of default against Yosi on January 23, 2018 (Dkt. No. 13), and subsequently moved for default judgment. Yosi did not oppose the motion, and has not otherwise appeared in the action to defend itself. The Court issued an order for further briefing (Dkt. No. 19), which Zweig responded to by seeking leave to amend the complaint (Dkt. Nos. 20-21). The Court granted Zweig leave to amend the complaint, which he did. Am. Compl.. Zweig personally served the complaint on Yosi (Dkt. No. 25), and the Clerk of the Court entered default upon Zweig's motion after Yosi once again failed to appear (Dkt. No. 27). The Amended Complaint adds a claim under the New York Labor Law.

Now before the Court is Zweig's Second Motion for Default Judgment.

**DISCUSSION**

**A.    Jurisdiction and Service of Process**

In considering whether to enter default judgment, a district court must first determine whether it has jurisdiction over the subject matter and the parties to the case. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

1.    <u>Subject Matter Jurisdiction</u>

Federal courts are courts of limited jurisdiction and are presumptively without jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court may

3

dismiss an action on its own motion if it finds that it lacks subject matter jurisdiction over the action. *Fiedler v. Clark*, 714 F.2d 77, 78-79 (9th Cir. 1983); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

The Amended Complaint alleges the parties are citizens of different states, and that the amount in controversy exceeds $75,000. Am. Compl. ¶¶ 1-2, 6. The requirements of diversity jurisdiction are met, and this Court may exercise jurisdiction over Zweig's state law claims pursuant to 28 U.S.C. § 1332.

2. Personal Jurisdiction

To enter default judgment, the Court must have a basis for the exercise of personal jurisdiction over the defendants in default. *In re Tuli*, 172 F.3d at 712; *see also King v. Russell*, 963 F.2d 1301, 1306 (9th Cir. 1992). Traditional bases for conferring a court with personal jurisdiction include a defendant's consent to jurisdiction, personal service of the defendant within the forum state, or a defendant's citizenship or domicile in the forum state. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880-81 (2011). None of these bases are present here; the Court accordingly must evaluate whether Yosi has sufficient minimum contacts with California to warrant the exercise of specific jurisdiction.

Zweig describes how Yosi hired him as an employee and officer, to work in Piedmont, California, as "part of a substantial marketing effort directed at doctors located in California." Zweig Decl. ¶ 6; Agreement ¶ 3(b) ("Officer's primary business office and normal place of work will be located in Piedmont, California"). Yosi thus "entere[ed] a contractual relationship [with Zweig] that 'envisioned continuing and wide reaching contracts' in the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (quoting *Burger King v. Rudzewicz*, 471 U.S. 463, 479-80 (1985)). Physical presence in California by an agent, in this instance, Zweig, "is certainly a relevant contact." *Id.* By hiring Zweig as an agent to establish business contacts and sales within California for Yosi, Yosi created its own contacts with California. Yosi thus may be haled into court in California based on its own affiliation with the forum, which is not a "'random, fortuitous, or attenuated' contacts [it made] by interacting with other persons affiliated with the State." *Id.* at

4

1123 (quoting *Burger King*, 471 U.S. at 475).

        3.      <u>Service of Process</u>

Additionally, the Court must "assess the adequacy of the service of process on the party against whom default is requested." *Bank of the West v. RMA Lumber Inc.*, 2008 WL 2474650, at *2 (N.D. Cal. June 17, 2008). "Without a proper basis for jurisdiction, or in the absence of proper service of process, the district court has no power to render any judgment against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process." *S.E.C. v. Ross*, 504 F.3d 1130, 1138-39 (9th Cir. 2007).

Zweig personally served an officer of Yosi with the summons and complaint. Henry Decl. ¶ 2 & Ex. A; *see also* COS. At the time of service, Dr. Feistmann "advised [the process server] that he . . . was authorized to accept service of process on behalf of Yosi, Inc." Henry Decl., Ex. A. Zweig once again personally served Yosi with a copy of the summons as well as the Amended Complaint. Second Henry Decl. ¶ 2, Dkt. No. 28-2; Second COS, Dkt. No. 25. This satisfies the requirements for serving a corporation under Federal Rule of Civil Procedure 4(h)(1)(B).

## B. Legal Standard – Default Judgment

Federal Rule of Civil Procedure 55(b)(2) permits a court, following default by a defendant, to enter default judgment in a case. "The district court's decision whether to enter default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In determining whether default judgment is appropriate, the Ninth Circuit has enumerated the following factors for courts to consider: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Where a default judgment is granted, the scope of relief is limited by Federal Rule of Civil Procedure 54(c), which states that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

**C. Application to the Case at Bar**

Applying the foregoing *Eitel* factors to the case at bar, the undersigned finds default judgment is warranted in favor of Plaintiff.

1. The Possibility of Prejudice to Plaintiff

The first factor the Court considers in determining whether to grant a default judgment is the possibility of prejudice to Plaintiff if a default judgment is not entered. *Eitel*, 782 F.2d at 1471-72. Courts have held that prejudice exists where denying the requested default judgment would leave the plaintiff without a proper remedy. *See Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916 (C.D. Cal. 2010) (concluding the plaintiff would suffer prejudice if default judgment was not entered where the plaintiff had only received partial payment owed under a contract).

The Complaint alleges, and Zweig declares, that Yosi owes him money under the terms of the Agreement, acknowledges owing him money, and refuses to pay him money that is owed to him. Zweig will suffer prejudice if default judgment is not entered, as he will not be able to collect funds owed for work performed. This factor weighs in favor of granting default judgment.

2. Substantive Claims and the Sufficiency of the Complaint

The second and third *Eitel* factors require the Court to look at the merits of the substantive claims and the sufficiency of the allegations in the Complaint. *Eitel*, 782 F.2d at 1471-72. Zweig moves for default judgment on two of the claims asserted in the Complaint: breach of contract and New York Labor Law section 191.[1]

a. *Choice of Law*

The Agreement, which is attached to the Complaint, contains a choice of law clause: "This Agreement will be governed by, and construed in accordance with, and all disputes between the parties will be governed exclusively by the domestic internal laws of the State of New York,

---

[1] Although "Plaintiff requests that the Court grant default judgment on the [New York Labor Code] cause of action in Plaintiff's amended complaint" (Second Mot. for Default Judgment at 6), Plaintiff also argues "[t]he complaint establishes a contract, a breach, and damages from that breach. . . ." (*id.* at 5). The Court construes this to mean Plaintiff seeks default judgment on both the breach of contract claim and the New York Labor Law claim.

6

without regard for conflicts of law principles." Agreement ¶ 8; *see also* Suppl. Br. at 3-4, Dkt. No. 20 (acknowledging New York choice of law clause).

As this Court sits in diversity, it must use the choice-of-law rules of California to determine which substantive state law to apply. *See Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005). California's choice-of-law rules generally reflect strong policy considerations in the enforcement of freely negotiated choice-of-law contractual clauses. *See Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 462 (1992). Freely negotiated choice-of-law clauses will be enforced by California courts unless "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state. . . ." *Id.* at 465 (quoting § 187(2) of the Restatement (Second) of Conflict of Laws).

Here, there is no question that New York has a substantial relationship to the parties and the transaction: the CEO of Yosi, Inc. is located in New York (*see* Agreement at ECF p.12); the Agreement requires any notice required or permitted thereunder to be made in writing to Yosi at an address in New York (*id.* ¶ 12 and ECF p.12); and service was accomplished by serving a director of Yosi, Inc. in New York (*see* Henry Decl. ¶ 2). It also does not appear that the law of the chosen state would be contrary to a fundamental policy of California, at least with respect to the two claims upon which Plaintiff seeks to obtain default judgment. First, the elements of a breach of contract claim are identical under California and New York law (*see infra* at § C.2.b), and there is no indication the analysis nor the remedies available are materially different under New York law. Second, New York's Labor Code also requires employers to promptly pay wages due to an employee, and the penalties provided under New York law are greater in this instance than those available to Zweig under California law. *See* Am. Compl. ¶ 44 (California law provides penalty in the amount of wage rate multiplied by thirty days) & ¶ 55 (N.Y. Labor Law § 198.5 provides penalty in the amount equaling unpaid wages); First Mot. for Default Judgment at 7, Dkt. No. 18 (requesting $16,153.80 in penalties under California Labor Code); Second Mot. for Default Judgment at 7 (requesting $81,968.79 in penalties under New York Labor Code); *see also*

Suppl. Br. at 3 (acknowledging "New York labor law is not contrary to the fundamental policy of California[.]"). New York law, which the parties chose in the Agreement, should apply.

### b. *Breach of Contract*

The Amended Complaint asserts a breach of contract claim. Am. Compl. ¶¶ 15-22. "Under New York law, there are four elements to a breach of contract claim: '(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 188-89 (S.D.N.Y. 2011) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).[2] The Complaint alleges each of these elements: the existence of—and attaches— the Agreement, Zweig's performance of his obligations under the Agreement, Yosi's breach of the Agreement by failing to pay Zweig and to reimburse him for advances he paid on the company's behalf, and Zweig was damaged as a result of not being paid for the work he performed or reimbursed for the money he advanced.

### c. *New York Labor Law § 191*

The Amended Complaint asserts a claim under New York Labor Law § 191, and requests penalties under New York Labor Law § 198. Am. Compl. ¶¶ 46-52.

Section 191(3) provides that, "[i]f employment is terminated, the employer shall pay the wages not later than the regular pay day for the pay period during which the termination occurred, as established in accordance with the provisions of this section." The Amended Complaint alleges Yosi failed to pay Plaintiff wages earned and unpaid at the time his employment terminated. Am. Compl. ¶ 49. Neither the Amended Complaint nor Zweig state when the termination occurred, but Zweig declares that Yosi owes him wages for work performed between November 2016 and August 2017 (and that Yosi was untimely in paying him for work performed between September 2016 and November 2016). Zweig Decl., Ex. B. Zweig also requests payment of a two-month

---

[2] The elements of this claim are the same under California law. *See Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965, 979 (N.D. Cal. 2014) ("The elements of a claim for breach of contract [under California law] are: 'the existence of the contract, performance by or excuse for nonperformance by the plaintiff, breach by the defendant, and damages.'" (quoting *First Comm'l Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001)).

8

severance at termination without cause, per the terms of the Agreement, for September and October 2017. *Id.* Thus, Zweig provides sufficient evidence the termination occurred in August 2017, and that Yosi failed to pay him wages due "not later than the regular pay day for the pay period during which the termination occurred."[3]

In addition, New York Labor Law § 198(1-a) provides that:

> In any action instituted in the courts upon a wage claim by an employee . . . in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due . . .

The Amended Complaint, together with Zweig's Declaration, establishes Yosi failed to pay Zweig for wages owed within the time required by New York law. As a result, and because Yosi has not proven a good faith basis to believe the underpayment was in compliance with the law, Yosi is liable for the full amount of underpayment, reasonable attorneys' fees, prejudgment interest, and liquidated damages.

### 3. The Sum of Money at Stake in the Action

The fourth *Eitel* factor addresses the amount of money at stake in relation to the seriousness of the defendant's conduct. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). When the amount at stake is substantial or unreasonable in light of the allegations in the complaint, default judgment is disfavored. *See Eitel*, 782 F.2d at 1472 (affirming the denial of default judgment where the plaintiff sought $3 million in damages and the parties disputed material facts in the pleadings). "However, when the sum of money at stake is

---

[3] Section 191 provides different frequencies of payment based on the type of employment: "A commission salesperson shall be paid the wages, salary, drawing account, commissions and all other monies earned or payable in accordance with the agreed terms of employment, but not less frequently than once in each month and not later than the last day of the month following the month in which they are earned" (Section 191(1)(c)), while "[a] clerical and other worker shall be paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer" (Section 191(1)(d)). Regardless of which subsection applies, Zweig has demonstrated Yosi failed to pay him in a timely manner, since he alleges that his wages remain unpaid as of May 2018.

tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1100 (N.D. Cal. 2014).

Zweig seeks a total of $188,948.96, representing unpaid wages and expenses, liquidated damages owed under New York law, costs and attorneys' fees, and prejudgment interest. Zweig Decl., Ex. B. The amount at stake is tailored to the specific misconduct alleged in the Amended Complaint: Yosi's failure to pay Zweig pursuant to the terms of the Agreement, and violation of the New York Labor Law by failing to pay the wages owed. This factor weighs in favor of default judgment.

### 4. The Possibility of Dispute Concerning Material Facts

The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the material facts surrounding the case. *Eitel*, 782 F.2d at 1471-72. Upon entry of default, the defendant is "deemed to have admitted all well-pleaded factual allegations" in the complaint. *DirecTV, Inc. v. Huynh*, 503 F.3d 847, 851 (9th Cir. 2007) (citing Fed. R. Civ. P. 55(a)).

The well-pleaded allegations of the Amended Complaint establish Zweig is entitled to the relief requested here. This factor weighs in favor of default judgment.

### 5. Whether Default was Due to Excusable Neglect

The sixth *Eitel* factor examines whether the defendant's failure to respond to the Complaint was the result of excusable neglect. *Eitel*, 782 F.2d at 1471-72. Zweig served Yosi with the summons and complaint, with a motion for summary judgment (Dkt. No. 10-1 at ECF p.18), with the Amended Complaint, and also with the Second Motion for Default Judgment (Dkt. No. 28-3). Yosi made no appearance in this matter and failed to respond to the present Motion. There is nothing in the record suggesting this failure is based on excusable neglect. *See Shanghai Automation Instr. Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (default after proper service was not excusable neglect). In fact, Yosi's CEO Hari Prasad discussed the lawsuit with Zweig and Zweig's attorney. Second Henry Decl. ¶ 4 ("Prasad has indicated his awareness that a lawsuit was filed in email correspondence with Plaintiff on January 4, 2018[. On] January 10, 2018, by email, [Zweig's attorney] reminded Mr. Prasad, who is presently unrepresented, of the lawsuit (as well as the Motion for Summary Judgment that the Court denied without prejudice.").

10

Thus, this factor supports default judgment.

### 6. Policy Favoring Deciding a Case on its Merits

The last *Eitel* factor examines whether the policy of deciding a case based on the merits precludes entry of default judgment. *Eitel*, 782 F.2d at 1472. In *Eitel*, the Ninth Circuit admonished that "[c]ases should be decided on their merits whenever reasonably possible." *Id.* However, courts have recognized that "the mere existence of [Rule 55(b)] indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (internal quotation marks and citation omitted). Similarly, other courts have stated that default judgment is appropriate when a defendant refuses to litigate a case. *See, e.g.*, *Board of Trs. v. RBS Wash. Blvd, LLC*, 2010 WL 145097, at *4 (N.D. Cal. Jan. 8, 2010). Here, nothing in the record shows Yosi attempted to participate in the proceedings. As such, a decision on the merits would not be possible. In situations such as this, Rule 55(b) allows the court to grant default judgment. This final factor weighs in favor of granting the Motion.

### 7. Summary of the *Eitel* Factors

Based on the foregoing analysis, the undersigned finds each of the *Eitel* factors weighs in favor of granting default judgment. Accordingly, the undersigned **RECOMMENDS** the District Judge **GRANT** the Motion and enter default judgment against Yosi.

## D. Relief Sought

After determining liability, the Court then calculates the amount of damages that should be awarded. *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1078 (C.D. Cal. 2012). This two-step process is proper because while for purposes of default judgment the Court generally accepts as true the factual allegations of the complaint, the Court need not do so regarding damages. *Id.*

Zweig requests a judgment of $188,948.96, representing: $69,775.45 in unpaid salary: $12,193.33 in severance owed under the terms of the Agreement; $1,172.50 for money Zweig advanced on behalf of Yosi; $81,968.79 in penalties pursuant to New York Labor Law § 198(1-a); $14,770 in attorneys' fees; $690 in costs of suit; and $8,368.89 in prejudgment interest.

1. Damages

Through his Declaration, Zweig proves up the salary owed to him for work performed pursuant to the terms of the Agreement. *See* Zweig Decl. The Agreement provides for an initial base salary in the amount of $140,000 per year, which will be reduced to $80,000 after the completion of certain milestones. Agreement ¶ 5. In his Declaration, Zweig calculates his monthly base salary before and after certain milestones were reached, and Yosi's partial payment of back wages in January 2017. Zweig Decl. ¶ 7 & Ex. B. Zweig sufficiently establishes that pursuant to the terms of the Agreement, Yosi owes him $69,775.45 in unpaid wages. The Agreement also provides for a cash severance payment equal to two months of the base salary in effect at the time of termination, should the employer terminate the Agreement without cause, or should the employee terminate the Agreement with good reason. Agreement ¶ 7(b). Zweig declares he terminated the Agreement with cause, and sufficiently establishes that Yosi owes him $12,193.33 for two months' severance, at the lower base rate in effect at the time of termination. Zweig Decl. ¶ 11 & Ex. B.

Pursuant to New York Labor Law §198(1-a), Zweig is entitled to recover liquidated damages "equal to one hundred percent of the total amount of the wages found to be due." Zweig calculates his liquidated damages ($81,968.79) based on his unpaid base wages ($69,775.45) and on the two-month severance package ($12,193.33). *See* Zweig Decl. ¶¶ 7, 11, 16. New York Labor Law defines "wages" as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis" as well as "benefits or wage supplements" such as "separation" pay. New York Labor Law §§ 190, 198-c(2). Zweig has sufficiently established he is entitled to recover as liquidated damages pursuant to New York Law "one hundred percent" of the $81,968.79 Yosi owes him in unpaid "wages."

Pursuant to New York Labor Law § 198(a-1), Zweig also is entitled to recover reasonable attorneys' fees, penalties in the amount of the unpaid wages, and prejudgment interest. Zweig declares his "attorney's fees total $14,770, not including the costs of preparing this Motion for Default Judgment." Zweig Decl. ¶ 17. Neither Zweig nor his counsel offer any information to

12

support the reasonableness of this request: for example, they do not state his attorney's hourly rate, state the number of hours worked on what, nor that the work was reasonable and necessary. The undersigned **RECOMMENDS** the District Judge **DENY** the request for attorneys' fees **WITHOUT PREJUDICE**. Zweig should provide sufficient information supporting his fee request to allow the District Judge to evaluate its reasonableness.

Pursuant to the terms of the Agreement, Zweig is entitled to recover the $1,172 in expenses he incurred "in pursuance and furtherance" of Yosi's "business upon receipt of reasonably supporting documentation, provided that he obtained prior written consent before incurring this expense." Agreement ¶ 6. Under New York Law, "wages" also includes "reimbursement for expenses." New York Labor Law §§ 190, 198-c(2). The Amended Complaint does not include any allegations regarding these expenses. *See* Am. Compl. Zweig also does not provide any details regarding these expenses, any evidence he obtained prior written consent to advance this expenditure, or evidence that he presented reasonably supporting documentation to Yosi. *See* Zweig Decl. ¶ 13 ("I am also owed $1,172.50 for money advanced to pay for legal fees incurred by Yosi with regard to documents prepared on behalf of the company."). The undersigned therefore **RECOMMENDS** the District Court **DENY WITH PREJUDICE** the request for reimbursement of these expenses, as they "differ in kind from . . . what is demanded in" the Amended Complaint and what is permitted under the Agreement. *See* Fed. R. Civ. P. 54(c).

2. Costs

Zweig also seeks costs in the amount of $690: $450 for the filing fee, $120 for attempted service on Yosi, and $120 for successful service on Yosi. Zweig Decl. ¶ 18. The Court's filing fee is $400, not $450; as such, Zweig's costs should be reduced by $50. *See* Dkt. No. 1 (docket entry noting "Filing fee $400"). The undersigned otherwise finds these costs reasonable. Accordingly, the undersigned **RECOMMENDS** the District Judge **GRANT IN PART** the request for an award of costs in the amount of $640.

3. Pre-Judgment Interest

Pursuant to New York Labor Law § 198(1-a), Plaintiff also is entitled to recover prejudgment interest "as required under the civil practice law and rules." That interest rate, under

New York law, is 9%. New York Civ. Practice Law & Rules § 5004.[4] Plaintiff calculates the prejudgment interest owed through May 15, 2018 on his unpaid salary as $7,571.29, and the prejudgment interest owed on his severance package as $797.60. Zweig Decl. Ex. B.

Based on the unpaid salary and severance owed to Plaintiff through the end of May 2018, the undersigned calculates this prejudgment interest on his unpaid salary at $7,851.09. Pursuant to the terms of the Agreement, Plaintiff's severance payment was due to be made "no later than ninety (90) days from the termination date." Agreement ¶ 7(b). Based upon Plaintiff's termination date of August 2017, his severance payment was due November 2017. The undersigned calculates prejudgment interest on the severance payment at $548.70.

The undersigned **RECOMMENDS** the District Judge **GRANT** the request for an award of prejudgment interest in the amount of $8,399.79, and any additional prejudgment interest that accrues through the date of judgment.

## CONCLUSION

Based on the above analysis, the undersigned **RECOMMENDS** the District Court **GRANT IN PART** Zweig's Motion for Default Judgment and enter judgment against Defendant Yosi Inc. The undersigned further **RECOMMENDS** the Court award Plaintiff:

(1) 69,775.45 in unpaid wages, $12,193.33 in severance, $81,968.79 in liquidated damages;

(2) Pre-judgment interest in the amount of $8,399.79, continue to accrue through the date of judgment;

(3) Costs in the amount of $640.

The undersigned further **RECOMMENDS** the District Court **DENY** Zweig's request for attorneys' fees without prejudice, and **DENY** Zweig's request for unreimbursed expenses.

Plaintiff shall serve a copy of this Report and Recommendation upon Defendant. Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), a party may serve and file

---

[4] "The awarding of prejudgment interest is considered a question of substantive law." *Schwimmer v. Allstate Ins. Co.*, 176 F.3d 648, 650 (2d Cir. 1999) (citing *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir.1998)). The Court therefore must apply New York's 9% prejudgment interest rate.

any objections within 14 days after being served.

**IT IS SO RECOMMENDED.**

Dated: June 4, 2018

_____
MARIA-ELENA JAMES
United States Magistrate Judge